SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON (Cal. Bar No. 168646) (pro hac vice)
BENJAMIN O. AIGBOBOH (Cal. Bar No. 268531) (pro hac vice)
PATRICK D. RUBALCAVA (Cal. Bar No. 335940) (pro hac vice)
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:    310.228.3700
Facsimile:    310.228.3701
E mail:       ccardon@sheppardmullin.com
              baigboboh@sheppardmullin.com
              prubalcava@sheppardmullin.com

*Attorneys for Defendant*
Patagonia, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heather Knight | No. CV-24-00255-TUC-RM |
| Plaintiff, | *Assigned to the Hon. Rosemary Marquez* |
| v. | **DEFENDANT PATAGONIA, INC.'S MOTION TO DISMISS** |
| Patagonia, Incorporated, | |
| Defendant. | [Oral Argument Requested] |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................. 2

III.    ARGUMENT ...................................................................................... 2

    A.      The Court Lacks Personal Jurisdiction Over Patagonia .................... 3

        1.      The Court lacks general jurisdiction over Patagonia. ......................... 3

        2.      The Court lacks specific jurisdiction over Patagonia. ......................... 4

            a.      Plaintiff did not purposefully direct any activities towards Arizona. .................................................. 5

            b.      Plaintiff's claim does not arise out of Patagonia's forum-related conduct. .................................. 6

            c.      Exercise of jurisdiction over Patagonia would be unreasonable. ............................................ 7

    B.      Plaintiff Lacks Standing to Bring This Action ................................. 7

        1.      Plaintiff Fails to Demonstrate a Concrete Harm ................................. 8

        2.      One Court Has Recently Found No Concrete Harm in Identical Claims, Following *TransUnion*. ....................... 9

    C.      Plaintiff Fails to State a Claim Under the Arizona Records Act .................. 12

        1.      The Arizona Records Act Regulates Records of a Telephone or Other Communications Service Provider Providing A Platform—It Does Not Regulate Parties to a Communication. ......... 12

        2.      Plaintiff Has Not Alleged That She Is a Customer As Required By The Arizona Records Act. ........................ 16

IV.     CONCLUSION ................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

<u>Federal Cases</u>

*Aether, LLC v. Unt Holdings, OU*
    2022 WL 16554691 (C.D. Cal. Oct. 31, 2022) ............................................................. 4

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...................................................................................... 12

*Balistreri v. Pacifica Police Dep't*
    901 F.3d 696 (9th Cir. 1988)........................................................................ 12

*Bassett v. ABM Parking Services, Inc.*
    883 F.3d 776 (9th Cir. 2018)........................................................................ 10

*Bates v. United Parcel Servs., Inc.*
    511 F.3d 974 (9th Cir. 2007).......................................................................... 8

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................... 12, 16

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*
    65 F. Supp. 3d 840 (N.D. Cal. 2014) .......................................................... 12

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983) ........................................................................................ 8

*Cybersell, Inc. v. Cybersell, Inc.*
    130 F.3d 414 (9th Cir. 1997)..................................................................... 4, 6

*Diaz v. One Technologies, LLC*
    2023 WL 6633842 (9th Cir. Oct. 12, 2023)................................................. 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
    564 U.S. 915 (2011) ...................................................................................... 3

*Hartley v. Urban Outfitters, Inc.*
    -- F. Supp. 3d --, 2024 WL 3445004 (E.D. Pa. July 17, 2024) ............................*passim*

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*
    546 U.S. 694 (1982) ...................................................................................... 7

*International Shoe Co. v. Washington*
    326 U.S. 310 (1945) ...................................................................................... 3

*Kamal v. J. Crew Group, Inc.*
    918 F.3d 102 (3d Cir. 2019).................................................................................. 10

*Kokken v. Guardian Life Ins. Co. of Am.*
    511 U.S. 375 (1994)............................................................................................ 7

*Leocal v. Ashcroft*
    543 U.S. 1 (2004)............................................................................................... 14

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)............................................................................................ 8

*Mavrix Photo, Inc. v. Brand Techs., Inc.*
    647 F.3d 1218 (9th Cir. 2011)........................................................................... 3, 4

*McCarthy v. United States*
    850 F.2d 558 (9th Cir. 1988).............................................................................. 8

*Pebble Beach Co. v. Caddy*
    453 F.3d 1151 (9th Cir. 2006)............................................................................ 4

*Pistor v. Garcia*
    791 F.3d 1104 (9th Cir. 2015)............................................................................ 8

*Powers v. One Techs., LLC*
    2021 WL 3519282 (W.D.N.C. Aug. 10, 2021)................................................... 4

*Schwarzenegger v. Fred Martin Motor Co.*
    374 F.3d 797 (9th Cir. 2004)...................................................................... 3, 4, 5, 7

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016)............................................................................................ 8

*Steel Co. v. Citizens for a Better Environment*
    523 U.S. 83 (1998)............................................................................................. 8

*Thompson v. McCombe*
    99 F.3d 352 (9th Cir. 1996)............................................................................... 8

*TransUnion LLC v. Ramirez*
    594 U.S. 413 (2021)..................................................................................... 7, 9, 10

*United States v. Bahe*
    201 F.3d 1124 (9th Cir. 2000)........................................................................... 15

*XMission, L.C. v. Fluent LLC*
    955 F.3d 833 (10th Cir. 2020)........................................................................... 5

No. CV-24-00255-TUC-RM
PATAGONIA'S MOTION TO DISMISS
SMRH:4866-0593-5316.9

*Zoobuh, Inc. v. Williams*
    2014 WL 7261786 (D. Utah Dec. 18, 2014)...................................................................4

State Cases

*Martinez v. Zuniga*
    547 P.3d 371 (Ariz. Ct. App. 2024) ..............................................................3

*State v. Barnett*
    101 P.3d 646 (Ariz. Ct. App. 2004) .............................................................14

Docketed Cases

*Carbajal v. Gap Inc.*
    Case No. 2:24-cv-01056-ROS ........................................................................1

*Carbajal v. Home Depot U.S.A., Inc.*
    Case No. 2:24-cv-00730-DGC........................................................................1

*Dominguez v. Lowe's Cos., Inc.*
    Case No. 2:24-cv-01030-DLR .......................................................................1

*McGee v. Nordstrom, Inc.*
    Case No. 2:23-cv-01875 (W.D. Wash.) .........................................................1

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Fair and Accurate Credit Transactions Act of 2003 ........................................10

Federal Rule of Civil Procedure
    Rule 12(b)(1)...................................................................................................7
    Rule 12(h)(3)...................................................................................................7

United States Constitution Due Process Clause ................................................3

State: Statutes, Rules, Regulations, Constitutional Provisions

Arizona Rule of Civil Procedure
    Rule 4.2(a)......................................................................................................3

Arizona Telephone, Utility, and Communication Service Records Act (Arizona
    Records Act), Ariz. Rev. Stat. Ann.
    § 44-1376 *et seq.* .....................................................................................*passim*
    § 44-1376.01 ......................................................................................9, 14, 15
    § 44-1376.01(A)(1) ......................................................................................17
    § 44-1376.01(A)(1)–(3).................................................................................13
    § 44-1376.01(B) ............................................................................................13
    § 44-1376(4)..................................................................................................13

1

§ 44-1376.04(A) ................................................................................ 17
§ 44-1376.05 ..................................................................................... 14
§ 44-1376.06(A) ................................................................................ 17

2

3

Other Authorities

4

2006 Arizona Lesiglation Sessions Ch. 260
    (House Bill 2785) ........................................................................... 13

5

6

Arizona Local Rule of Practice

7

§ 12.1(c) ............................................................................................. 2
§ 12(b)(1) ........................................................................................... 8
§12(b)(6) ...................................................................................... 2, 12

8

9

Restatement (Second) of Torts

10

§ 652B ............................................................................................. 11

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4866-0593-5316.9
PATAGONIA'S MOTION TO DISMISS

I.  **INTRODUCTION**

This case is part of a "recent wave" of putative class actions throughout the country brought under the Arizona Telephone, Utility, and Communication Service Records Act (the "Arizona Records Act"), Ariz. Rev. Stat. Ann. § 44-1376 *et seq..  See Hartley v. Urban Outfitters, Inc.*, -- F. Supp. 3d --, 2024 WL 3445004, at *4 (E.D. Pa. July 17, 2024).[1]  The Arizona Records Act was enacted to prevent pretexting, i.e., the criminal act of obtaining confidential telephone records and personal information under false pretenses.

Plaintiff Heather Knight ("Plaintiff"), on behalf of a putative class, asserts that Defendant Patagonia, Inc. ("Patagonia"), violated the Arizona Records Act by sending promotional emails to Plaintiff, and others who signed up to receive them, and tracking certain consumer information via pixels embedded in the emails.  Until this recent wave of cases, the Arizona Records Act, enacted in 2006 and amended once in 2007, had never been contorted to cover industry-standard tracking of promotional emails.

But the Court need not reach the merits of Plaintiff's allegations.  As a threshold matter, Plaintiff fails to demonstrate that the Court has personal jurisdiction over Patagonia, a California corporation, on the basis that it sent promotional emails to those who asked to receive them without regard to the recipient's physical location.  As to the conduct at issue, Plaintiff has not demonstrated that Patagonia has a sufficient relationship with Arizona to be haled into court here.

Plaintiff also fails to demonstrate any injury as a result of Patagonia's alleged tracking of consumer information via its promotional emails.  The court in *Hartley* determined that a plaintiff bringing identical claims under the Arizona Records Act failed to demonstrate any concrete injury under Article III.  *See* 2024 WL 3445004, at *7.

Even if she had, Plaintiff also fails to state a claim under the Arizona Records Act, a

---

[1] Additionally, Defendant's counsel is aware of three recent cases in this district alleging very similar claims under the Arizona Records Act.  *See Carbajal v. Home Depot U.S.A., Inc.*, Case No. 2:24-cv-00730-DGC; *Carbajal v. Gap Inc.*, Case No. 2:24-cv-01056-ROS; *Dominguez v. Lowe's Cos., Inc.*, Case No. 2:24-cv-01030-DLR; *see also McGee v. Nordstrom, Inc.*, Case No. 2:23-cv-01875 (W.D. Wash.)

1  statute which was not envisioned to empower the cause of action Plaintiff brings.[2]

2  ## II.  BACKGROUND

3      Plaintiff filed the Complaint against Patagonia on May 20, 2024.  Dkt. 1.  The

4  Complaint asserts one count of violation of the Arizona Records Act relating to pixels

5  Plaintiff alleges Patagonia embedded into promotional emails it sends to individuals who

6  signed up to receive these emails.  *Id.* ¶¶ 3–4.

7      Plaintiff alleges that Patagonia "solicits customers to sign up for its email marketing

8  list."  *Id.* ¶ 2.  Plaintiff and members of the putative class all asked to receive promotional

9  emails from Patagonia.  *Id.* ¶ 3.  According to Plaintiff, Patagonia "embeds hidden spy

10 pixel trackers within its email," which "capture and log sensitive information including the

11 time and place subscribers open and read their messages, how long the subscriber's read

12 the email, subscribers' location, subscribers' email client type, subscribers' IP address,

13 subscribers' device information and whether and to whom the email was forwarded to."

14 *Id.* ¶ 4.  Plaintiff alleges Patagonia did not receive the recipients' consent to collect this

15 information.  *Id.*

16     Plaintiff further alleges she has opened and reviewed promotional emails from

17 Patagonia for the past two years.  *Id.* ¶¶ 7–8.  Plaintiff seeks to represent a class of "[a]ll

18 persons within Arizona who have opened a marketing email containing a tracking pixel

19 from Defendant."  *Id.* ¶ 38.  Plaintiff alleges that Patagonia's conduct "invaded Plaintiff's

20 and Class members' right to privacy by its invasive surveillance of Plaintiff's and Class

21 members' sensitive reading habits including on when they opened and read an email.  This

22 clandestine collection of their confidential email records also intruded upon their

23 seclusion." *Id.* ¶ 54.

24 ## III.  ARGUMENT

25     The Court should dismiss this action for three reasons: (i) first, the court lacks

26 personal jurisdiction over Patagonia; (ii) next, Plaintiff lacks standing to bring this action;

27

28 [2] In compliance with Local Rule 12.1(c), the parties met and conferred on August 2, 2024, regarding the Rule 12(b)(6) issues in this Motion, but were unable to reach agreement.

1    and (iii) finally, Plaintiff fails to state a claim under the Arizona Records Act.

2    **A.**     **The Court Lacks Personal Jurisdiction Over Patagonia**

3    Arizona's long-arm statute provides that an Arizona court may exercise personal

4    jurisdiction over a nonresident defendant to the maximum extent permitted under the Due

5    Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Martinez v.*

6    *Zuniga*, 547 P.3d 371, 372 (Ariz. Ct. App. 2024). To satisfy due process, a defendant must

7    have sufficient "minimum contacts" with the forum State such that "maintenance of the

8    suit does not offend traditional notions of fair play and substantial justice." *International*

9    *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation

10   omitted). Plaintiff "bears the burden of establishing that jurisdiction is proper." *Mavrix*

11   *Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

12   *1.*     *The Court lacks general jurisdiction over Patagonia.*

13   Plaintiff does not allege that the Court may exercise general jurisdiction over

14   Patagonia. *See* Compl. ¶ 13. A court may assert general jurisdiction over a foreign

15   corporation only "when their affiliations with the State are 'continuous and systematic' as

16   to render them essentially at home in the forum State." *Goodyear Dunlop Tires*

17   *Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). "For general

18   jurisdiction to exist, a defendant must engage in continuous and systematic general

19   business contacts that approximate physical presence in the forum state." *Id.* (citations

20   omitted) (cleaned up). The standard is "exacting," "because a finding of general

21   jurisdiction permits a defendant to be haled into court in the forum state to answer for any

22   of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374

23   F.3d 797, 802 (9th Cir. 2004).

24   As the Complaint notes, Patagonia is a California corporation with its headquarters

25   in California. Compl. ¶ 11. Patagonia has no stores, offices, or warehouses in Arizona.

26   Declaration of Jessica Dahlstrum ("Dahlstrum Decl.") ¶ 2. The Complaint has no factual

27   allegations suggesting that Patagonia's contacts with Arizona may be considered

28   continuous or systematic.

1
 2.    **The Court lacks specific jurisdiction over Patagonia.**

2        Plaintiff's allegations are insufficient for the Court to find specific jurisdiction here.

3    To exercise specific jurisdiction over a nonresident, a court must find that three

4    requirements are met.  *See Schwarzenegger*, 374 F.3d at 802.  First, the nonresident

5    defendant must purposefully direct its activities or consummate some transaction with the

6    forum or resident thereof.  *Id.*; *see Mavrix Photo*, 647 F.3d at 1228 (courts engage in a

7    "purposeful direction" analysis for claims sounding in tort).

8        Purposeful direction inquires into "whether a defendant purposefully directs his

9    activities at the forum state, applying an 'effects' test that focuses on the forum in which

10    the defendant's actions were felt, whether or not the actions themselves occurred within

11    the forum."  *Mavrix Photo*, 647 F.3d at 1228 (cleaned up).  The "effects test" requires that

12    the defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3)

13    causing harm that the defendants know is likely to be suffered in the forum state."  *Id.*

14    (cleaned up).  In determining whether a defendant "expressly aimed" at the forum state,

15    "'something more' is needed in addition to a mere foreseeable effect."  *Pebble Beach Co.*

16    *v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (citation omitted).  The Ninth Circuit has

17    long held that "mere advertisement" without "something more" is insufficient to establish

18    purposeful direction.  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997);

19    *see also Aether, LLC v. Unt Holdings, OU*, 2022 WL 16554691, at *8 (C.D. Cal. Oct. 31,

20    2022) (finding promotional materials in the form of advertisements insufficient for

21    purposeful direction).  Similarly, "nationwide marketing programs will not satisfy

22    minimum contacts with a forum since there is no specific targeting of the forum state or its

23    citizens."  *Powers v. One Techs., LLC*, 2021 WL 3519282, at *3 (W.D.N.C. Aug. 10,

24    2021) (citation omitted); *see also Zoobuh, Inc. v. Williams*, 2014 WL 7261786, at *5 (D.

25    Utah Dec. 18, 2014) (concluding no specific jurisdiction existed in part because defendant

26    had no knowledge of where emails were being sent); *XMission, L.C. v. Fluent LLC*, 955

27    F.3d 833, 846 (10th Cir. 2020) (same).

28        If the court determines that the nonresident defendant has purposefully directed

1    activity towards the forum, it must then analyze the next two requirements for specific

2    personal jurisdiction.  *See Schwarzenegger*, 374 F.3d at 802.  Specifically, the court must

3    determine if the claim is one which "arises out of or relates to the defendant's forum-

4    related activities" and whether the exercise of jurisdiction "comport[s] with fair play and

5    substantial justice, i.e. it [is] reasonable."  *Id.*

6          As set forth below, Patagonia lacks minimum contacts with Arizona, because it has

7    not purposefully directed any email sign up activity or the sending of any promotional

8    emails toward Arizona, Plaintiff's claims do not arise out of Patagonia's contacts with

9    Arizona, and exercise of jurisdiction over Patagonia would be unreasonable.

10                    **a.      Plaintiff did not purposefully direct any activities towards**

11                              **Arizona.**

12         The Complaint states, in conclusory fashion, that Patagonia "has purposefully

13   availed itself of the laws and benefits of doing business in this State[.]"  Compl. ¶ 13.

14   Plaintiff's cause of action arises from Patagonia's alleged tracking of certain information

15   when she opens an email from Patagonia.  Compl. ¶ 4.  Specifically, Plaintiff claims

16   Patagonia utilizes pixel trackers to track information such as "the time and place

17   subscribers open and read [its] messages, how long the subscriber's [sic] read the email,

18   subscribers' location, subscribers' email client type, subscribers' IP address, subscribers'

19   device information and whether and to whom the email was forwarded to."  *Id.*  Plaintiff's

20   claim, therefore, is based *solely* on her opening of Patagonia promotional emails.

21         A user will not receive promotional emails from Patagonia unless the user

22   affirmatively signs up to receive such.  Dahlstrum Decl. ¶ 3.  Once a user signs up to

23   receive such emails, Patagonia will send intermittent promotional emails to the email

24   address with which the user signed up.  *Id.* ¶ 4.  Patagonia does not target any promotional

25   content based on a user's Arizona address.  *Id.*

26         Plaintiff does not allege that Patagonia knows the physical location of users to

27   whom it sends promotional emails prior to sending them.  Even if Plaintiff had provided

28   her shipping address during a purchase, arguably providing information about her

1    residency, that is irrelevant absent an allegation that Plaintiff or other Arizona residents

2    were sent emails that contained embedded pixels *because of* their presence in Arizona.  *See*

3    *Cybersell, Inc.*, 130 F.3d at 418.  In any event, Patagonia has no record of a person by

4    Plaintiff's name with an Arizona address ever making a purchase from Patagonia.  *See*

5    Dahlstrum Decl. ¶ 5.  Accordingly, even if Plaintiff does reside in Arizona and Patagonia

6    sent her promotional emails, Patagonia did not direct an email to her because of her

7    Arizona residence.[3]  *See* Compl. ¶ 4.

8         The Complaint makes no allegation that Patagonia expressly aims its promotional

9    emails at Arizona.  Patagonia's conveyance of promotional emails, without foreknowledge

10   of the recipient's physical location, is the only jurisdictional contact that Plaintiff alleges.

11   However, Plaintiff has not demonstrated that Patagonia "expressly aimed" its promotional

12   emails to an Arizona-specific audience.

13                   **b.      Plaintiff's claim does not arise out of Patagonia's forum-**

14                   **related conduct.**

15        The Complaint alleges, again in conclusory fashion, that "Plaintiff's claims arise

16   out of Defendant's forum-related activities," with no factual specifics.  Compl. ¶ 13.  For

17   similar reasons to those stated above, Plaintiff's claim also does not arise out of

18   Patagonia's forum-related activities.  Patagonia does not attempt to cultivate an audience

19   by targeting promotional materials to individuals with Arizona addresses because of those

20   addresses.  Patagonia merely sends promotional emails to those who have asked to receive

21   them.  *See Diaz v. One Technologies, LLC*, 2023 WL 6633842, at *1 (9th Cir. Oct. 12,

22   2023) (finding claims premised on defendant's conveyance of marketing emails not to

23   "arise out of or relate to [defendant's] website") (quoting *Schwarzenegger*, 374 F.3d at

24   802).  In the absence of *any* facts alleging, for example, that Patagonia ran a promotional

25   email marketing campaign using the technologies in question and aimed at individuals it

26

27   _____

     [3] Even if Plaintiff has made an online purchase from Patagonia under some other name or

28   variant, that purchase would be irrelevant to any specific forum related conduct, i.e. the
     targeting of promotional emails because of residence in Arizona.

1  knew to be Arizona residents *because of* their residence in Arizona, Plaintiff cannot show

2  that Patagonia's geographic-agnostic conveyance of promotional emails is the "something

3  more" required for express aiming.

### c.   Exercise of jurisdiction over Patagonia would be unreasonable.

6        As stated above, Patagonia neither deliberately engaged in any significant activities

7  in Arizona nor availed itself of the State.  *See Schwarzenegger*, 374 F.3d at 802.  The only

8  forum-related conduct Plaintiff alleges is Patagonia's non-geographic specific conveyance

9  of emails to email subscribers.  Based on this conduct, and in the absence of any further

10  allegations, Patagonia would not anticipate being haled into court in Arizona.  The exercise

11  of jurisdiction over Patagonia in this action would not be reasonable.

### B.   <u>Plaintiff Lacks Standing to Bring This Action</u>

13        Plaintiff lacks Article III standing to bring this action, and the Court, therefore,

14  lacks subject matter jurisdiction over this matter.  Federal courts are courts of "limited

15  jurisdiction" and the law presumes that "a cause lies outside of this limited jurisdiction."

16  *Kokken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Subject matter

17  jurisdiction is both a statutory requirement and an Article III requirement.  *Insurance*

18  *Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 546 U.S. 694, 701–02 (1982).

19  Article III limits the jurisdiction of federal courts to actual cases or controversies.

20  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  A determination that the court

21  lacks subject matter jurisdiction requires dismissal.  *See* Fed. R. Civ. P. 12(h)(3).  Here,

22  Plaintiff lacks Article III standing because she has not alleged a concrete harm, and,

23  therefore the Court does not have subject matter jurisdiction over Plaintiff's claims and

24  dismissal is required.

25        A defendant may challenge a plaintiff's standing by a motion to dismiss pursuant to

26  Federal Rule of Civil Procedure 12(b)(1) on the grounds of lack of subject matter

27  jurisdiction because "the issue of standing is jurisdictional."  *Steel Co. v. Citizens for a*

28  *Better Environment*, 523 U.S. 83, 102 (1998).  When subject matter is challenged under

No. CV-24-00255-TUC-RM

PATAGONIA'S MOTION TO DISMISS

1   Rule 12(b)(1), the plaintiff bears the burden of proving that jurisdiction exists.

2   *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  When the court is presented

3   with a challenge to its subject matter jurisdiction, "no presumptive truthfulness attaches to

4   a plaintiff's allegations."  *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (cleaned

5   up).  In addressing this issue, the court is not limited to the Complaint, but may consider

6   outside evidence and resolve factual issues that go to the issue of the court's subject matter

7   jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

8          To have Article III standing, a plaintiff must demonstrate: (1) she has suffered

9   "injury in fact—an invasion of a legally protected interest which is … concrete and

10  particularized"; (2) "a causal connection between the injury and the conduct complained

11  of"; and (3) the likelihood "the injury will be redressed by a favorable decision."  *Lujan v.*

12  *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations

13  omitted).  These requirements do not change in a class action—the named plaintiff must

14  establish Article III standing.  *Bates v. United Parcel Servs., Inc.*, 511 F.3d 974, 985 (9th

15  Cir. 2007).  Injury in fact is "the '[f]irst and foremost' of standing's three elements."

16  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Steel Co. v. Citizens for Better*

17  *Environment*, 523 U.S. 83, 103 (1989)).  To establish this element, "a plaintiff must allege

18  'an invasion of a legally protected privacy interest'" that is concrete—meaning it "must

19  actually exist"—as well as particularized—meaning it "must affect the plaintiff in a

20  personal and individual way."  *Id.* (quoting *Lujan*, 504 U.S. at 560).  Moreover, the harm

21  alleged must be "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at

22  560.  "Abstract injury is not enough."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101

23  (1983).

24          ***1.     Plaintiff Fails to Demonstrate a Concrete Harm***

25          Plaintiff's claims arise out of Patagonia's alleged use of pixels that identify when

26  emails—which Plaintiff had to have asked to be sent—were opened and read.  The

27  Arizona Records Act makes it unlawful for a person to "[k]nowingly procure … [a]

28  communication service record" of any Arizona resident "without the authorization of the

1  customer[.]" *Id.* § 44-1376.01. The statute defines "communication service record" as

2  including "subscriber information," like a person's "name, … electronic account

3  identification and associated screen names … or access logs," as well as "records of the

4  path of an electronic communication between the point of origin and the point of delivery

5  and the nature of the communication service provided, such as … electronic mail … or

6  other service features." *Id.* § 44-1376(1).

7        To satisfy the concrete harm requirement, a plaintiff must "identif[y] a close

8  historical or common-law analogue for their asserted injury." *TransUnion*, 594 U.S. at

9  423. The injury Plaintiff is alleged to have suffered must be the same that a "traditional

10  cause[] of action" seeks to prevent. *Id.* (citation and internal quotation marks omitted).

11       The Complaint is devoid of any articulable theory of harm suffered by Plaintiff,

12  with the exception of one conclusory paragraph asserting Patagonia "invaded Plaintiff's

13  and Class members' right to privacy by spying on when they opened and read an email,"

14  which allegedly "also intruded upon their seclusion." Compl. ¶ 54. There are no

15  allegations of any "concrete" injury sustained by Plaintiff as a result of the alleged

16  invasion of privacy.

17              **2.      *One Court Has Recently Found No Concrete Harm in Identical***

18                      ***Claims, Following* TransUnion.**

19        The Eastern District of Pennsylvania court in *Hartley* recently determined that the

20  plaintiff's claims, brought by the same firm representing the Plaintiff in this case, and

21  identical to the claims asserted here, did not sufficiently allege a concrete harm. *Hartley*,

22  2024 WL 3445004, at *7. First, the court determined that Plaintiff's claim under the

23  Arizona Records Act did not demonstrate an invasion of privacy. *Id.* at *4. In so doing,

24  the court noted: (1) the Arizona Records Act "has never been invoked in a civil action of

25  this nature"; (2) the Telephone Records and Privacy Protection Act of 2006, the federal

26  counterpart to the Arizona Records Act, "is narrower in scope, plainly does not cover

27  Defendant's alleged conduct, and therefore is of limited help"; (3) the plaintiff did not

28  allege any disclosure of any information to third parties, thus distinguishing claims for

1    appropriation of name or likeness, publicity given to private life, or false light; and (4)

2    Supreme Court and Third Circuit authority "caution against finding a concrete harm when

3    there is no actual dissemination, even if that information is protected by statute." *Id.* at

4    *4–5.

5         All of these bases for distinguishing a common law claim for invasion of privacy

6    are also present here.  The *Hartley* court is the only one to analyze whether the Arizona

7    Records Act applies to a claim of this nature.  The Complaint here is also devoid of any

8    allegations that Patagonia disclosed Plaintiff's information to any third party.  *See*

9    *generally* Compl.  Further, as the *Hartley* court noted, the Supreme Court in *TransUnion*

10   "differentiated between class members whose misleading credit files were disseminated to

11   third parties and those class members whose files were inaccurate but maintained only

12   internally by the credit reporting agency."  *Hartley*, 2024 WL 3445004, at *5 (citing

13   *TransUnion*, 594 U.S. at 432–34).  The Supreme Court held that individuals whose files

14   were not disclosed could not have suffered any concrete harm and rejected arguments that

15   the potential for dissemination was sufficient to confer standing.  *TransUnion*, 594 U.S. at

16   434.

17        The *Hartley* court also relied on *Kamal v. J. Crew Group, Inc.*, 918 F.3d 102, 113

18   (3d Cir. 2019), wherein the Third Circuit held that plaintiff's allegations that the defendant

19   printed on sales receipts the first five and last four digits of plaintiff's credit card number,

20   in violation of the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), which

21   prohibits the printing of more than the last five digits, did not allege a concrete injury,

22   because plaintiff failed to allege disclosure to a third party.  The Ninth Circuit has held

23   similarly, finding a plaintiff did not allege a concrete injury under Article III in a case

24   alleging a violation of FACTA based on the inclusion of credit card expiration dates on

25   receipts.  *See Bassett v. ABM Parking Services, Inc.*, 883 F.3d 776, 778 (9th Cir. 2018).  In

26   *Bassett*, the Ninth Circuit determined the plaintiff's alleged injury of "exposure … to

27   identity theft and credit/debit fraud" and "imminent risk" that his "property would be

28   stolen and/or misused by identity thieves" was insufficient to confer Article III standing.

1   *Id.*

2        Next, the *Hartley* court determined the plaintiff's claim under the Arizona Records

3   Act was unlike common law intrusion upon seclusion.  *See* 2024 WL 3445004, at *5–6.

4   "One who intentionally intrudes … upon the solitude or seclusion of another of his private

5   affairs or concerns, is subject to liability to the other for invasion of his privacy, if the

6   intrusion would be highly offensive to a reasonable person."  Restatement (Second) of

7   Torts § 652B.  In finding that the challenged conduct would not be offensive to a

8   reasonable person, the court emphasized that the plaintiff "opted in to receiving emails

9   from Defendant by joining its subscriber list" and "continued to consume its promotional

10  materials by regularly opening them."  2024 WL 3445004, at *6.   "As a willing

11  subscriber, Plaintiff could not have been harmed by Defendant's procurement of her name

12  or associated email addresses—details she necessarily provided to Defendant when she

13  signed up for its promotional emails."  *Id.*  Further, "[a]s a matter of law, … digital records

14  reflecting merely the dates and times at which Plaintiff opened promotional emails she

15  signed up to receive, and the length of time she spent reading them, are not sufficiently

16  personal to support a concrete injury."  *Id.* at *7.

17       Similarly, here, Plaintiff would have had to affirmatively sign up for Patagonia

18  promotional emails.  Dahlstrum Decl. ¶ 3.  Further, Plaintiff concedes that "[f]rom

19  approximately 2014, Plaintiff frequently opened emails from Defendant to review

20  promotional materials."  Compl. ¶ 8.

21       The Court should follow the reasoning of the above-cited authorities and hold that

22  Plaintiff has failed to establish a concrete injury.  While the Complaint contains a

23  conclusory statement that Patagonia invaded Plaintiff's privacy and intruded upon her

24  seclusion by noting when she opened and read emails from them (Compl. ¶ 54), Plaintiff

25  fails to identify any private, sensitive, or confidential information procured by Patagonia.

26  Plaintiff does not allege, for example, that Patagonia collected "highly sensitive categories

27  of personal information," like "complete credit card information, medical history, or social

28  security number."  *See Hartley*, 2024 WL 3445004, at *6.  Nor does she allege how data

collected concerning when someone opens and reads an email or certain information about the reader can reveal private information. There are no allegations that Patagonia collected Plaintiff's private or personal information or that such information was publicly disclosed or sold. Without such specifics, Patagonia's mere collection of information indicating when Plaintiff opened and read an email she signed up to receive does not convey private information or constitute the sort of highly objectionable conduct needed to state a claim for invasion of privacy or intrusion upon seclusion.

### C.   Plaintiff Fails to State a Claim Under the Arizona Records Act

The Complaint should also be dismissed because Plaintiff fails to state a cognizable claim under the Arizona Records Act. A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of claims asserted in a complaint. A claim should be dismissed where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.3d 696, 699 (9th Cir. 1988). A plaintiff must do more than allege "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must allege sufficient facts "to raise a right to relief above a speculative level." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, "[t]o survive a motion to dismiss, a complaint must plead sufficient factual matter, accepted as true to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 849 (N.D. Cal. 2014) (cleaned up).

### 1.   The Arizona Records Act Regulates Records of a Telephone or Other Communications Service Provider Providing A Platform—It Does Not Regulate Parties to a Communication.

The Arizona Legislature enacted the Arizona Records Act to "[p]rohibit the unauthorized sale of telephone records." Arizona House Bill Summ., 2006 Reg. Sess. H.B. 2785 (Feb. 15, 2006). Representative Jonathan Paton, the sponsor of the bill, "explained

1  that this bill has come about due to the proliferation of internet sites which sell [telephone]

2  records." *Id*; *see also* Arizona Fact Sheet, 2006 Reg. Sess. H.B. 2785 (Mar. 27, 2006)

3  (discussing the FCC's investigation into "unauthorized procurement and sale of phone

4  records). The Legislature adopted the Arizona Records Act to combat such elicit sales and

5  direct "telecommunications carriers maintaining telephone records to establish reasonable

6  procedures to protect the consumer against such unauthorized or fraudulent disclosure."

7  Arizona House Bill Summary, 2006 Reg. Sess. H.B. 2785 (Feb. 16, 2006).

8         In its original form, the statute prohibited a person from: a) "knowingly procuring,

9  attempting to procure, soliciting or conspiring with another to procure a telephone record

10 … by fraudulent, deceptive or false means"; b) "knowingly selling or attempting to sell the

11 telephone record … without authorization"; and c) "receiving a telephone record …

12 knowing that the record has been obtained without the authorization of the customer to

13 whom the record pertains or by fraudulent, deceptive or false means." 2006 Arizona

14 Legis. Serv. Ch. 260 (H.B. 2785) § 44-1376.01(A)(1)–(3). The statute also "require[d]

15 telephone companies that maintained [] telephone records … to establish reasonable

16 procedures to protect against unauthorized or fraudulent disclosure of telephone records[.]"

17 *Id.* § 1376.01(B). The statute further defined "telephone record" as information retained

18 by telephone companies relating to "the telephone number dialed by the customer or the

19 incoming number of the call directed to a customer or other data related to such calls

20 typically contained on a customer telephone bill." *Id.* § 44-1376(4). A "telephone

21 company" was defined as any person providing commercial telephone services to a

22 customer. *Id.*

23         The Legislature amended the statute in 2007 to additionally ban procurement,

24 selling, and receiving of "public utility" and "communication service" records. AZ H.R.

25 B. Summ., 2007 Reg. Ses. H.B. 2726 (Mar. 2, 2007). The Arizona Records Act defines

26 "communication service record" to include:

27         subscriber information, including name, billing or installation address, length
        of service, payment method, telephone number, electronic account

28         identification and associated screen names, toll bills or access logs, records
        of the path of an electronic communication between the point of origin and

the point of delivery and the nature of the communications service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging, or other service features.

A.R.S. § 44-1376(1).  The statute also states that the definition does not include "the content of any stored, oral, wire or electronic communication or a telephone record." *Id.* As before, the purpose of the amendment was to prevent the procurement and sale of confidential personal information under false pretenses. *See* Arizona Senate Fact Sheet, 2007 Reg. Sess. H.B. 2726 (Mar. 12, 2007).  The Arizona Legislature has not further amended the statute since 2007.

This statutory language and history are clear that the subject of the Arizona Records Act are records of communications maintained by a service providing the communications platform.  There is nothing in the language of the statute or its history demonstrating that it does or was intended to apply to information known to a party to a communication.  Yet that is all that Plaintiff alleges that Patagonia is here—a party to an email communication. There is no allegation that Patagonia is the provider of any communications platform, such as Plaintiff's email or internet service provider.  All that is alleged is that Patagonia was a party to email communications that Plaintiff requested.

The information Plaintiff alleges Patagonia collects facially does not fall within the statutory definition of a "communication service record."[4]  Plaintiff claims pixels "capture and log sensitive information including the time and place subscribers open and read their messages, how long the subscribers read the email, subscribers' location, subscribers' email client type, subscribers' IP address, subscribers' device information and whether and to whom the email was forwarded to."  Compl. ¶ 4.  None of the information Plaintiff

---

[4] Any ambiguities in the Arizona Records Act must be interpreted in Patagonia's favor. The Act is a criminal statute—violation is a class 1 misdemeanor offense.  A.R.S. § 44-1376.05.  When a "penal statute[ is] susceptible to different interpretations," the rule of lenity requires courts to "resolve all doubts in the defendant's favor."  *State v. Barnett*, 101 P.3d 646, 649 (Ariz. Ct. App. 2004) (citation omitted); *see also Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004) (When a penal statute has "both criminal and noncriminal applications," "the rule of lenity applies" to both.).

1   claims Patagonia collects can be fairly considered any of the statutorily-enumerated

2   examples of a communication service record.  *See* A.R.S. § 44-1376(1).

3       The Arizona Legislature has not amended the statute since 2007.  If the Legislature

4   intended the statute to apply to this type of conduct, they would have made that clear—the

5   court should not infer such legislative intent.  *See United States v. Bahe*, 201 F.3d 1124,

6   1132 (9th Cir. 2000) ("Absent any mention in a statute's legislative history that Congress

7   intended a change, courts ordinarily will refuse to find that ambiguous statutory language

8   significantly alters an existing statutory scheme.") (quoting *In re Century Cleaning*

9   *Services, Inc.*, 195 F.3d 1053, 1060 (9th Cir. 1999)).

10      Additionally, the Arizona Records Act's legislative history makes clear that the

11  statute is directed at preventing the sale of a log of calls by the user of a telephone system

12  or similar communications platform.  However, Patagonia provides no communications

13  platform.  Rather, it is a party to communications with Plaintiff, whether that be a

14  promotional email sent to her, or her clicking on a link and visiting the Patagonia website.

15  Indeed, the conduct of which Plaintiff complains is more akin to a party to a call keeping a

16  record of whether the call was answered (the opening of the email) and/or whether the

17  other party called them back (clicking on a link in the email).  Plaintiff does not allege

18  Patagonia's collection of any consumer communication to which Patagonia is not a party.

19  Stated differently, Patagonia here is not a third party service provider allegedly selling the

20  communications records of Plaintiff to a willing buyer.  Here, the records at issue relate to

21  Patagonia's own interactions with Plaintiff as a party to the communications.  Patagonia,

22  just like anyone sending an email using Outlook's "read receipt" feature, is entitled to keep

23  a record of when a recipient opens its emails or when that recipient voluntarily

24  communicates with it via clicking on a link and visiting its website.  Under Plaintiff's

25  interpretation, Party A could be held liable under the Arizona Records Act simply for

26  telling a third party that she called Party B earlier in the day and that Party B answered the

27  call.  Such a reading is clearly beyond the scope of the statute.

28      Plaintiff's attempts to portray Patagonia's alleged conduct as having some insidious

quality are unavailing.  An IP address is simply a number that internet service providers assign to devices connected to the internet so that they can communicate with each other. An individual cannot visit a website, i.e. click on a link in an email bringing them to a webpage, without disclosing the user's IP address, because that is a necessary component of the communication of two devices.  Plaintiff alleges that Patagonia embeds links in its promotional emails to subscribers that take them to pages on the Patagonia site and Patagonia can identify that the site visitor was the recipient of the email.  Compl. ¶¶ 47–48. But Plaintiff fails to describe how this function occurs.[5]  Not only does this bald conclusory accusation not meet the requirements of *Twombly* and *Iqbal* (see fn 6, *infra*), stripped of adjectives this is no different than receiving somebody's phone number, receiving a call from that number, and reaching the reasonable assumption that the person who is calling you is the one who provided the number.[6]

## 2.    *Plaintiff Has Not Alleged That She Is a Customer As Required By The Arizona Records Act.*

The Complaint is also deficient insofar as Plaintiff fails to allege adequately that she is a "customer."  The Arizona Records Act affords relief in a civil suit only to "a *customer* whose communication service records … were procured, sold or received in violation of this article."  A.R.S. § 44-1376.04(A) (emphasis added).  Further, a violation of the

---

[5] In reality, the links in such an email open a page with a customized URL for that specific email, e.g., if it is a link to a "New Arrivals" page it is not the exact same URL as the standard "New Arrivals" page, though the content is identical.  By doing this, absent some strange or unforeseen circumstance, the only visitor to that URL would be the subscriber who received the email with that customized link.

[6] To the extent Plaintiff alleges Patagonia collects some information that is beyond the scope of what is normal and necessary for everyday Internet use, the Complaint fails to allege sufficient detail to state this claim.  *See Twombly*, 550 U.S. at 555.  Plaintiff cannot simply state the broad capabilities of pixels to collect certain confidential information and infer Patagonia's malfeasance.  To the extent Plaintiff argues Patagonia intentionally placed pixels to collect certain confidential information, such as "to whom the email was forwarded," her claims do not allege adequately this scheme.  *See Hartley*, 2024 3445004, at *7 ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected.").

Arizona Records Act requires that the defendant procure communication service records "without the authorization of the *customer* to whom the record pertains." *Id.* § 44-1376.01(A)(1) (emphasis added).  The Complaint does not allege that Plaintiff was Patagonia's "customer," or that Plaintiff ever made a purchase from Patagonia (including the date and method of such purchase).  In fact, Patagonia is unable to locate a record of anyone with Plaintiff's name and an Arizona address ever making a purchase.  Dahlstrum Decl. ¶ 5.  Plaintiff, therefore, fails to meet the criteria set forth in section 44-1376.06(A).

For the reasons set forth above, Plaintiff fails to state a claim under the Arizona Records Act.

## IV.   **CONCLUSION**

For the foregoing reasons, Patagonia respectfully requests the Court grant this Motion and dismiss Plaintiff's Complaint.

Dated:                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By   _____
                                  */s/ P. Craig Cardon*
                                P. CRAIG CARDON
                                BENJAMIN O. AIGBOBOH
                                PATRICK D. RUBALCAVA

                                *Attorneys for Defendant*
                                Patagonia, Inc.